UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SUNLAND, INC.,  Case No. 7-13-13301 TR

    Debtor.

### MEMORANDUM OPINION ON HAMPTON FARMS, LLC'S EMERGENCY MOTION FOR RECONSIDERATION, ETC.

This matter came before the Court on Hampton Farms, LLC's ("Hampton's") Emergency Motion for Reconsideration of Court's Order (doc 402), Request for Stay Pending Appeal, Grant Leave for Interlocutory Appeal, and for Equitable Relief, doc. 403 (the "Motion for Reconsideration and Stay"). The Motion for Reconsideration and Stay relates to the Court's Memorandum Opinion, doc. 401 ("Memorandum Opinion") and Order Denying Motion to Approve Sale, Reopening Auction, and Setting Final Hearing on Motion to Sell, doc. 402 ("Order"), both entered March 25, 2014.

By its Motion for Reconsideration and Stay, Hampton seeks the following relief:

    a.    Reconsideration of the rulings set forth in the Memorandum Opinion and Order;

    b.    An order staying any consummation of the sale to Golden Boy Farms, Ltd. ("Golden Boy");

    c.    Leave to file an interlocutory appeal of the Order; and

    d.    For the Court to exercise its equitable powers and award Hampton $500,000 from the proceeds of the sale of estate assets to Golden Boy.

The Court held a final hearing on the Motion for Reconsideration and Stay on March 26, 2014. After considering the Motion for Reconsideration and Stay and the arguments of counsel,

and being otherwise sufficiently informed, the Court denies the requested relief for the reasons set forth below.

## I. BACKGROUND AND PROCEDURAL HISTORY

On October 9, 2013, Sunland, Inc. filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Clarke C. Coll was appointed and is duly qualified and acting Chapter 7 trustee in this case ("Trustee"). During the months following the bankruptcy filing, the Trustee met with a number of potential buyers in an effort to sell most of the tangible assets of the estate (the "Acquired Assets").

On January 31, 2014, the Trustee filed a Motion For Orders (A) Authorizing Sale of Assets Free and Clear of All Liens, Claims and Interests, Subject to Higher and Better Offers, (B) Establishing Bidding Procedures, (C) Approving Break-Up Fee, and (D) Approving Surcharge For Trustee's Fees, Commission, And Costs (the "Motion"). By his Motion, the Trustee sought to establish a procedure under which he would sell the Acquired Assets to Ready Roast Nut Company, LLC ("Ready Roast") or any successful bidder at an auction of the assets. Under the proposed procedures, if the Trustee received one or more "Qualified Bids" from parties other than Ready Roast, then the Trustee would conduct an auction of the Acquired Assets and sell them to the high bidder, subject to Court approval. The Trustee sent notice of the Motion, including information regarding the auction, to all parties who expressed an interest in purchasing the Acquired Assets. He also advertised the sale in several national newspapers and trade journals.

From the time he filed the Motion until now, the Trustee has always emphasized the need for a speedy sale of the Acquired Assets. Per the terms of the Ready Roast agreement, the Trustee required a closing date of March 28, 2014. Hampton and Golden Boy all agreed to this

deadline.

On March 5, 2014, Hampton submitted a Qualified Bid to purchase the Acquired Assets. Hampton was the only party to submit such a bid. Shortly thereafter, the Court entered a stipulated order authorizing the sale of the Acquired Assets and adopting the Bidding Procedures attached to the Motion (the "Sale Order"). The Bidding Procedures set forth the requirements for bidding on the Acquired Assets at auction. The Sale Order and Bidding Procedures make clear that any sale is subject to Court approval, and that such approval must include a finding that the successful bid provides the highest or otherwise best value for the Acquired Assets and is in the best interest of the estate.

An auction of the Acquired Assets was conducted on March 20, 2014. Ready Roast and Hampton participated in the auction. A total of 14 bids were made by Ready Roast and Hampton, beginning at $17,475,000. Hampton was the high bidder, with a bid of $20,050,000. Ready Roast was the back-up bidder, with a bid of $20,000,000. After the auction, Hampton and Ready Roast each executed amendments to their respective asset purchase agreements to amend the purchase price consistent with the auction.

The Court held a hearing on March 21, 2014 to determine whether to approve the sale of the Acquired Assets to Hampton for $20,050,000. Shortly before the hearing the Trustee received a telephone call from Paul Henderson of Golden Boy, offering to buy the Acquired Assets on the same terms and conditions as Hampton, for $25,000,000. After hearing arguments of counsel and the representations of the Trustee, the Court continued the hearing until March 24, 2014.

At the continued hearing, the Court heard testimony from the Trustee and a representative of Golden Boy, admitted several exhibits into evidence, and heard extensive arguments of

counsel. The Trustee sought guidance from the Court as to whether he was bound to proceed with the Hampton offer, or was free to pursue a sale to Golden Boy for $25,000,000.

The morning of March 25, 2014, the Court entered the Memorandum Opinion and Order disapproving the sale to Hampton for $20,050,000, ruling that the sale to Hampton could not be approved as being in the best interests of the estate. The Court reopened the auction for further bidding among Golden Boy, Hampton, and Ready Roast, with Golden Boy's opening bid of $25,000,000. Hampton filed the Motion for Reconsideration and Stay later that afternoon.

At the reopened auction, Golden Boy was the high bidder at $26,000,000, topping Hampton's bid of $25,100,000.

## II. DISCUSSION

### A. The Motion for Reconsideration.

Depending on when the motion is filed and the type of relief sought, courts construe motions to reconsider under either Fed.R.Civ.P. 59(e) (motion to alter or amend a judgment) or Fed.R.Civ.P. 60(b) (relief from judgment). *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194 (10th Cir. 2011). Since the Motion was filed one day after the Memorandum Opinion and Order were entered, the Court will construe it as a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9023. *In re McCaull*, 2009 WL 185469, *3 (10th Cir. Jan. 26, 2009) (construing Debtor's motion to reconsider filed within the fourteen day period prescribed by Rule 9023 as a motion to alter or amend the judgment under Rule 59); *Buchanan v. Sherrill,* 51 F.3d 227, 230 n. 2 (10th Cir. 1995) ("No matter how styled, we construe a post-judgment motion filed within [14] days challenging the correctness of the judgment as a motion under Rule 59(e).").

-4-

To be eligible for relief from a final judgment under Rule 59, the moving party must show: (1) an intervening change in the controlling law; (2) new evidence previously unavailable for the Court to consider; or (3) a need to correct clear error or prevent manifest injustice. *See Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1995). Reconsideration may also be warranted when "the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination." *In re Sunflower Racing, Inc.,* 223 B.R. 222, 223 (D. Kan. 1998). However, Rule 59 does not afford parties seeking relief an opportunity to raise new arguments or to "rehash arguments previously considered and rejected by the court." *Id.*

The Motion for Reconsideration and Stay does not present any new arguments, law, or facts, but instead asks that the Court reconsider its ruling for the reasons explained in Hampton's previously filed brief.

The Court carefully considered Hampton's arguments before it issued the Memorandum Opinion and Order and concluded that they were not well taken. The Court is not inclined to reconsider those arguments now. The additional legal argument made by Hampton's counsel at the final hearing on the Motion for Reconsideration and Stay, while very well presented, did not add materially to the law the Court had already considered. The Court therefore finds that Hampton's request for reconsideration should be denied.

B.    <u>The Motion for Stay Pending Appeal</u>.

Federal Rule of Bankruptcy Procedure 8005 provides that a motion for stay pending appeal of a decision by a bankruptcy judge must first be made to the bankruptcy judge. Fed.R.Bankr.P. 8005. The purpose of a stay pending appeal is to preserve the status quo until the appeal is decided. *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego,* 2011 WL 4553071,

-5-

*1 (D. Kan. 2011) (citing *McClendon v. City of Albuquerque,* 79 F.3d 1014, 1020 (10th Cir. 1996)). In considering a motion for stay pending appeal, the Court considers the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770 (1987)).

The party seeking a stay pending appeal must satisfy all four factors to obtain a stay pending appeal. *See Moore v. Tangipahoa Parish School Bd.,* 2013 WL 141791, *20 (5th Cir. Jan. 14, 2013); *In re Sunflower Racing, Inc.,* 225 B.R. 225, 227 (D. Kan. 1998). Factors one and two -- likelihood of success[1] and irreparable harm -- are the most critical. *Nken,* 556 U.S. at 434 (explaining that "[t]he first two factors of the traditional standard are the most critical.").

        1.    <u>Whether Hampton Has Made a Showing it is Likely to Succeed on the Merits</u>. This factor weighs against Hampton. As an unsuccessful bidder, Hampton may lack standing to challenge the Court's approval of the sale on appeal. *See, e.g., In re Broadmoor Place Investments, L.P.,* 994 F.2d 744, 746 n. 2 (10th Cir.1993) (noting that "absent some other meritorious ground for appeal … an unsuccessful bidder and not an 'aggrieved person'" with standing to appeal an order approving a sale of assets); *Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273 (2nd Cir. 1997) (recognizing

---

[1] If the moving party establishes that the other three factors "tip decidedly in its favor," the "likelihood of success" factor for obtaining a stay pending appeal is "somewhat relaxed." *F.T.C. v. Mainstream Mktg. Services., Inc.*, 345 F. 3d 850, 852 (10th Cir. 2003); *F.T.C. v. Foster*, 2007 WL 3023158, at *1 (10th Cir. 2007). Under the relaxed standard, the movant can satisfy the "likelihood of success" requirement by showing that "questions going to the merits [are] so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Mainstream Mktg.* at 853 (internal quotations omitted). Because the Court finds that Hampton has failed to demonstrate that most of the other factors tip in its favor, the Court need not apply this more relaxed standard to the likelihood of success requirement.

-6-

that, although not an absolute rule, "an unsuccessful bidder ... usually lacks standing to challenge a bankruptcy court's approval of a sale transaction.").[2] Given the number of circuit court decisions involving somewhat similar facts, Hampton could be found by an appellate court to come within an exception to the general rule. Nevertheless, the standing issue would present a serious procedural hurdle in any appeal, complicating the appeal and diminishing Hampton's chances of success.

Even if Hampton has standing, the Court is not convinced Hampton is likely to prevail. The Court carefully reviewed the testimony of the witnesses presented at the March 24, 2014 hearing, reviewed the parties' briefs, and conducted a thorough, independent review of the case law in this area. The Court believes it followed Tenth Circuit case law to the extent it gave guidance in the matter, and relied upon well-reasoned circuit court opinions from other circuits to fill in any gaps in current Tenth Circuit law.

Stripped to its essence, Hampton's position is that it wants to buy the Acquired Assets for almost $6 Million less than Golden Boy. Its sole ground for insisting on this result (which would be terrible from the estate's perspective) is that Golden Boy's offer arrived a day after the auction. Since the auction procedures specified from day one (a specification that Hampton never objected to) that any successful bid was conditioned on Court approval based on a finding of "highest or otherwise best value," it is not clear what position Hampton can legitimately pursue on appeal.

Of course the appellate courts could disagree with the Court's decision, but the Court

---

[2] Potential bidders may have standing to object to a sale under § 363 if they were not given proper notice or if they challenge the intrinsic structure of the sale because of fraud, mistake, or unfairness. *See Colony Hill Associates*, 111 F.3d at 273 (potential bidders have standing to challenge sale where debtor fails to give proper notice of the sale); *In re Moran*, 566 F.3d 676, 681 (6th Cir. 2009) (An exception to the general rule that frustrated bidders lack standing to object to a sale "may exist where [the]… bidder challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness."). Those circumstances do not exist here.

finds that, at a minimum, it is more likely than not the decision will be upheld on appeal.

    2. <u>Whether Hampton Would Be Irreparably Injured Absent a Stay</u>. Hampton has a strong argument that it will be irreparably harmed. Given § 363(m), without a stay the Acquired Assets will soon be sold to Golden Boy, placing them out of Hampton's reach were it to succeed on appeal. Any appeal by Hampton therefore could become moot. *See e.g., In re C.W. Min. Co.,* 740 F.3d 548 (10th Cir. 2014) (discussing how appeals of § 363(m) orders may run into statutory and equitable mootness issues).

 On the other hand, the asset purchase agreements signed by Hampton (and Ready Roast and Golden Boy) do not give buyers the right to purchase the Acquired Assets if the Trustee defaults. Instead, the agreements allow the Trustee to simply return the buyer's earnest money as their "sole and exclusive remedy." Thus, even if Hampton prevailed on appeal the Trustee would not be required to sell the property to Hampton, and Hampton would have no damages claim or claim for specific performance. This damages limitation provision undercuts to a significant degree Hampton's irreparable harm argument.

 Notwithstanding Hampton's damages limitation problem, denying the stay request reduces Hampton's chances of owning the Acquired Assets if it were to prevail on appeal. The Court therefore finds that the factor addressing irreparable harm weighs in Hampton's favor.

    3. <u>Whether Issuance of the Stay Would Substantially Injure the Other Parties</u>. Granting a stay would substantially injure the Trustee, creditors, Golden Boy, and other parties in interest. An appeal could take years, during which time the Sunland peanut processing plant could sit idle, declining in value. The peanut inventory, with a value between $2 Million and $5 Million, would become worthless. Local farmers could rotate to other crops or find other buyers for their peanut production. Significant expenses would continue to accrue, including

interest, insurance, pest and rodent control, and security expenses. By the time all appeals were exhausted, the value of the Acquired Assets could go from $25 Million to a fraction of that amount.

Hampton argues that there would be no significant loss of value because, if Golden Boy terminated its interest due to a stay,[3] Hampton would then purchase the Acquired Assets for $25,100,000 as the back-up bidder and pursue the appeal. This argument is entirely speculative; no one can know when or if Golden Boy would terminate the agreement, or what Hampton might or might not do if such a termination occurred. Further, the argument proposes a scenario that seems to turn the stay pending appeal from a shield into a sword. Finally, the loss to the Trustee would be $900,000 at a minimum, a significant sum.

Hampton also argued that the Court should enter a stay until at least April 24, 2014 to allow it to obtain emergency review of the Court's decision. The Court does not believe there is any realistic chance of obtaining appellate review that quickly. Further, in all likelihood the party losing before the district court (or bankruptcy appellate panel) would seek Tenth Circuit review. To be meaningful, any stay would have to be lengthy.

Overall, this factor weighs against Hampton.

    4.    <u>Where the Public Interest Lies</u>. While there is a strong public interest in upholding the integrity of judicial sales,[4] there is also a strong public interest in paying creditors as much as possible in bankruptcy cases. Furthermore, in this case there is a strong public interest in completing a sale of the Acquired Assets as soon as possible, for the benefit of the

---

[3] The purchase agreement signed by the Trustee and Golden Boy provides that Golden Boy is obligated to close the transaction if closing can occur before April 24, 2014.

[4] The Court does not believe the integrity of judicial sales was compromised in this case. The bidding procedures and sale order required Court approval of any sale, which was to be based on a finding that the proposed sale "will provide the highest or otherwise best value for the Acquired Assets and is in the best interests of the estate." Golden Boy's unexpected $25 Million upset bid, which was made in good faith, prevented the Court from making such a finding in connection with Hampton's $20,050,000 bid.

-9-

Case 13-13301-t7    Doc 410    Filed 03/27/14    Entered 03/27/14 13:22:03 Page 9 of 12

area farmers, local vendors, and others in the Portales area. Sunland was a substantial economic presence in the Portales area and employed many area residents. Entry of a stay would prolong the economic suffering caused by Sunland's shut-down last August. On balance, the public interest strongly favors completing the sale immediately.

In summary, one factor favors Hampton and three factors favor the Trustee. Hampton's request for a stay must therefore be denied.

  C. <u>Leave for Interlocutory Appeal</u>.

Hampton asks for leave from this Court to file an interlocutory appeal. This request must be directed to the District Court or the Tenth Circuit Bankruptcy Appellate Panel. *See In re Gregory Rockhouse Ranch*, 2008 WL 394984 (Bankr. D.N.M. 2008) (request for leave to appeal must be directed to the bankruptcy appellate panel); *In re Countrywide Home Loans, Inc.,* 387 B.R. 467, 470 (Bankr. W.D. Pa. 2008) (same); *In re Frascella Enterprises, Inc.,* 388 B.R. 619 (Bankr. E.D. Pa. 2008) (bankruptcy court forwarded motion for leave to file interlocutory appeal to the district court for ruling).

Furthermore, since the Court's order granting the Trustee's motion to approve the sale of the Acquired Assets to Golden Boy for $26,000,000 is a final, appealable order, the issues Hampton wishes to take up on appeal can be addressed in connection with that order.

  D. <u>Equitable Relief</u>.

Finally, Hampton seeks an award of $500,000, to be paid from of the proceeds of the sale of the Acquired Assets. In order to seek such relief, Hampton should file an application for administrative expense claim. The Court would adjudicate any such claim in the normal course of business, and takes no position at this time whether the application would have merit.

-10-

Case 13-13301-t7    Doc 410    Filed 03/27/14    Entered 03/27/14 13:22:03 Page 10 of 12

### III. CONCLUSION

As the request for reconsideration makes no new arguments, it will be denied. The request for leave to file an interlocutory appeal must be directed to the appellate court and will therefore be denied without prejudice. The request for an award of $500,000 is denied without prejudice to Hampton filing an application for administrative expense.

As to Hampton's request for a stay, if the Court could stay the sale of the Acquired Assets without harming the estate, Golden Boy, creditors, or the public interest, it would seriously consider doing so, to preserve Hampton's right to an appeal. It is clear, however, that a stay, even of short duration, would significantly harm all interested parties, and possibly even harm Hampton as well, since the assets it bid on would decline in value. For this reason, and also because the Court does not believe Hampton is likely to succeed in any appeal, the Court cannot grant Hampton's request for a stay pending appeal.

A separate order will be entered consistent with this Memorandum Opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered March 27, 2014.

Copies to:

| | |
|---|---|
| Chris Pierce<br>2632 Mesilla St. NE<br>Albuquerque, NM 87110 | Paul M. Fish<br>P.O. Box 2168<br>Albuquerque, NM 87103-2168 |
| George D. Giddens, Jr<br>10400 Academy Rd NE, # 350<br>Albuquerque, NM 87111 | John J. Hall<br>600 Washington Ave. Suite 2500<br>St. Louis, MO 63101 |
| Clarke C. Coll<br>P.O. Box 2288<br>Roswell, NM 88202 | Gail Gottlieb<br>P.O. Box 1945<br>Albuquerque, NM 87103 |
| Alice N. Page<br>P.O. Box 608<br>Albuquerque, NM 87103 | Ed Mazel<br>201 3d Street NW, #505<br>Albuquerque, NM 87102 |
| Thomas D. Walker<br>500 Marquette Ave. NW, #650<br>Albuquerque, NM 87102 | Victor Carlin<br>P.O. Box 27047<br>Albuquerque, NM 87125 |
| Patricia A. Bradley<br>6500 Jefferson St. NE, #260<br>Albuquerque, NM 87109 | Roderick W. O'Donoghue<br>2601 Oberlin Rd., Ste. 100<br>Raleigh, NC 27608 |