UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SUNLAND, INC.,                                                                  No. 13-13301-tr7

    Debtor.

## MEMORANDUM OPINION

    The Chapter 7 trustee moved for approval of a settlement he reached with the debtor Sunland, Inc.'s ("Sunland's") main insurer, Great American Alliance Insurance Company ("Great American"). The trustee and Great American disagreed about whether Great American had insured Sunland against personal injury and business claims arising from a 2012 salmonella outbreak at Sunland's peanut processing plant. Under the settlement, Great American agreed to pay the estate $10.6 million to "buy back" its obligations under the insurance policies in question, with the sales proceeds to be used to pay salmonella-related claims. One settlement requirement is that the Court enjoin pursuit of any insured claims against Great American, instead "channeling" all such claims to the estate and the settlement fund. Only one creditor, Sjaak's Organic Chocolates ("Sjaak's"),[1] objected to the proposed settlement.

    The Court held a final hearing on the proposed settlement on September 30, 2014. Time was of the essence because settlement was conditioned on approval and payment by October 31, 2014. The Court entered findings of fact and conclusions of law on the record at the conclusion of the hearing, and approved the settlement. This *ex post facto* Memorandum Opinion details the

---

[1] Sjaak's, a commercial recall claimant, alleges it lost $200,000 because of the Sunland recall. Sjaak's filed a proof of claim in this case on September 19, 2014, nearly seven months after the claims bar date. The trustee objected to the claim on September 26, 2014.

reasoning behind the Court's ruling.[2]

## I. FACTS

The Court's ruling was based on the following facts, either stipulated to by the parties at the hearing or obtained by judicial notice of the Court file:[3]

Sunland manufactured peanut butter and roasted peanuts in Portales, New Mexico. In September, 2012, the Food and Drug Administration and the Centers for Disease Control alerted Sunland about a possible salmonella outbreak related to its peanut butter. Sunland subsequently shut down production at its manufacturing facility and recalled its products.

A large number of individuals and businesses asserted claims against Sunland because of the salmonella outbreak and resulting product recall. The claims totaled more than $30 million. Unable to pay, Sunland filed this Chapter 7 case on October 9, 2013, and the trustee was appointed.

At all relevant times Sunland owned insurance policies issued by Great American. Great American denied it was liable to indemnify Sunland against the salmonella-related claims.

The trustee and Great American negotiated extensively about insurance policy coverage. The result was a proposed Settlement and Policy Buyback Agreement, executed August 1, 2014

---

[2] Issuing explanatory opinions after the fact is an accepted practice when time constraints prevent issuing opinions with an order. *See, e.g., In re Dow Corning Corp.*, 198 B.R. 214, 218–19 (Bankr. E.D. Mich. 1996) (publishing a written opinion after issuing judgment where time was of the essence); *In re Motors Liquidation Co.*, 2014 WL 5819825, at *2 (Bankr. S.D.N.Y. Nov. 10, 2014) (because of time constraints, Judge Gerber made an oral ruling on various motions, followed by a written opinion detailing his reasoning). *See also Tidewater Fin. Co., Inc. v. Fiserv Solutions, Inc.,* 192 F.R.D. 516, 518 (E.D. Va. 2000) (court reserved the right to issue a written opinion after its oral ruling).

[3] *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (A "bankruptcy court [is authorized] . . . to take judicial notice of its own docket.").

(the "Agreement").  The Agreement fully and finally resolves all disputes between the parties about insurance coverage.  The Agreement calls for Great American to "buy back" the policies for $10.6 million.  The sale to Great American would be pursuant to § 363(f),[4] free and clear of all claims and interests.  The Agreement was conditioned on Court approval and on the Court issuing an injunction preventing creditors from pursuing claims against Great American, instead limiting recovery to the bankruptcy estate.  Among other provisions, the Agreement provides that $250,000 will be set aside for payment of late-filed claims such as Sjaak's.

On August 1, 2014, the trustee filed a motion to approve the Agreement.  Only Sjaak's objected, arguing:

      1.     The injunction would in effect be a non-debtor stay and a non-debtor discharge that is contrary to the Bankruptcy Code and exceeds the Court's authority;

      2.     The injunction is only available as part of a confirmed Chapter 11 plan, per § 524(g);

      3.     The Court should not enjoin Sjaak's without a preliminary and/or final injunction hearing;

      4.     The settlement proposal violates Sjaak's due process rights because nothing informed Sjaak's that failing to file a claim would preclude recovery against Great American; and

      5.     The settlement is contrary to the Bankruptcy Code because surplus proceeds would be paid over to Great American rather than to untimely claims.[5]

## II.    DISCUSSION

A.    Approval of Settlements Under Bankruptcy Rule 9019.

Fed. R. Bankr. P. 9019(a) provides that "[o]n motion by the trustee and after notice and

---

[4] All statutory references are to 11 U.S.C.
[5] Sjaak's did not pursue arguments 3 and 5 at the hearing, nor did it mention the arguments in its brief filed in support of its objection.  This opinion therefore will not address the arguments.

hearing, the court may approve a compromise or settlement." Compromises and settlements "are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in the sound discretion of the bankruptcy judge." *Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993). Compromises have become so common that "it is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3rd Cir. 1996). "The purpose behind compromises 'is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims.'" *Korngold v. Loyd (In re S. Med. Arts Cos. Inc.)*, 343 B.R. 250, 255 (10th Cir. BAP 2006) (quoting *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986)).

A trial on the merits of the proposed settlement is not required. *See, e.g., Port O'Call Inv. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851–52 (9th Cir. 1976); *Magill v. Springfield Marine Bank (In re Heissinger Res. Ltd.)*, 67 B.R. 378, 383 (C.D. Ill. 1986); *In re Carson*, 82 B.R. 847, 853 (S.D. Ohio 1987).

In deciding to approve a compromise under Bankruptcy Rule 9019, a court must consider "(1) the chance of success on the litigation on the merits; (2) possible problems in collecting the judgment; (3) the expense and complexity of the litigation; and (4) the interest of the creditors." *In re Korngold* at 256 (citing *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997). A court's decision to approve a settlement must be "an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).

B.  The Requested Injunction Would Not be a Non-Debtor Stay or Discharge, Would Not Be Contrary to the Bankruptcy Code, and Would Not Exceed the Court's Authority.

1. <u>The Insurance Policies are Property of the Estate</u>. The Bankruptcy Code, with some exceptions, defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The language of § 541 has been interpreted broadly to mean "all kinds of property, including tangible or intangible property, [and] causes of action . . . ." *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9 (1983) (quoting H.R. Rep. No. 95–595, p. 367 (1977); S. Rep. No. 95–989, p. 82 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5868, 6323). The *Whiting Pools* court noted "[t]he House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad." *Id.* at 205–06. "Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." *Id.* at 204.

Under the broad interpretation of § 541(a)(1), Sunland's rights under the Great American insurance policies are property of the estate. *See In re Dow Corning Corp.*, 198 B.R. at 244 (citing *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) ("There is no dispute that a debtor's interest in its insurance policies is property of the estate")); *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983), *vacated in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984) (the "[debtor's] rights under its insurance policies and all the causes of action arising thereunder constitute property of the [debtor's] estate[] within the purview of Section 541(a) of the Code."); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (debtor's product-liability insurance policy is property of the estate); *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984) ("the weight of authority supports" finding insurance policies are estate property); *Stinnett v. Laplante (In re Stinnett)*, 465 F.3d 309, 312 (7th Cir. 2006) ("As a general matter, insurance contracts in which the debtor has

an interest at the time the petition is filed constitute property of the estate for purposes of § 541(a).").

        2.    <u>Sjaak's Has No Direct Claim Against Great American</u>.  In New Mexico, a tort claimant has no direct claim against an alleged tortfeasor's insurer until there has been a judicial determination that the tortfeasor is liable.  *Hovet v. Allstate Ins. Co.,* 135 N.M. 397, 404 (S. Ct. 2004) (tort claimant will not have an action against insurer until there has been a judicial determination of the insured's fault and an award of damages); *King v. Allstate Ins. Co.,* 141 N.M. 612, 616 (Ct. App. 2007) (citing and following *Hovet*); *Jolley v. Associated Elec. & Gas Ins. Servs. Ltd,* 148 N.M. 436, 441 (S. Ct. 2010) (for insurance not mandated by statute, tort claimant has no direct cause of action against alleged tortfeasor's insurer).  This is the majority rule.  *See, e.g., In re Dow Corning*, 198 B.R. at 238–40 (analyzing Michigan law); *Dicola v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n (In re Prudential Lines Inc.)*, 158 F.3d 65, 72–73 (2d Cir. 1998) (under New York law, in an action on an indemnity policy, a judgment must first have been entered); *In re W.R. Grace & Co.,* 475 B.R. 34, 84 (D. Del. 2012) (tort claimants have no rights to insurance payments until they have obtained a judgment); *Houston v. Edgeworth (In re Edgeworth),* 993 F.2d 51, 53–54 (5th Cir. 1993) (tort plaintiff's interest in an insurance policy is contingent upon the plaintiff first obtaining a judgment).  *Cf. Intertek USA, Inc. v. Caribbean Petrol. Corp. (In re Caribbean Petrol. Corp.)*, 2013 WL 950361, at *3 (Bankr. D. Del. 2013), *affirmed*, 580 Fed. Appx. 82 (3d Cir. 2014) (citing Louisiana and Puerto Rico as minority "direct action" jurisdictions because of statutes adopted providing that an injured party may proceed directly against the tortfeasor's insurer).

        3.    <u>Sjaak's Has an "Interest" in the Policies</u>.  The term "'interest,' as used in Section 363(f), is not defined in the Bankruptcy Code."  *In re Mundy Ranch, Inc.*, 484 B.R. 416,

421 (Bankr. D.N.M. 2012). Bankruptcy courts have taken an expansive view of "interest" to mean more than an *in rem* interest such as a lien. *Id.* at 422 (§ 363(f) refers to "*any* interest in property") (emphasis in original). The Tenth Circuit Bankruptcy Appellate Panel has stated "the trend [when defining "interest"] seems to be toward a more expansive reading of interest in property as encompassing other obligations that may flow from ownership of the property." *Telluride Asset Resolution, LLC v. Telluride Global Dev., LLC (In re Telluride Income Growth, LP)*, 364 B.R. 390, 405 (10th Cir. BAP 2007).

Sjaak's has a claim against Sunland related to the salmonella outbreak, and therefore has an "interest" in the insurance policies as that term is used in § 363(f). *See In re Dow Corning Corp.,* 198 B.R. at 238 ("[A]n injured party has an interest of some type in the alleged tortfeasor's insurance policy . . . that . . . comes into being prior to the injured plaintiff obtaining judgment"); *In re Allied Products Corp.,* 288 B.R. 533, 536 (Bankr. N.D. Ill. 2003) (claimant has an interest in debtor's insurance policy, so the insurer may not buy back the policy free of the interest unless the interest attaches to the sales proceeds); *In re Peanut Corp. of Am.*, 2009 WL 8757732, at *4 (Bankr. W.D. Va. 2009) (approving a sale pursuant to § 363(f) binding on "all Persons holding Interests in the Policies . . . including without limitation, *all holders of Salmonella Tort Claims and Recall Claims under the Policies*.") (emphasis added); *MacArthur Co. v. Johns-Manville Corp.(In re Johns-Manville Corp.)*, 837 F.2d 89, 94 (2d Cir. 1988), *cert. den.*, 488 U.S. 868 (1988) (allows sale of policy back to insurer, free of claimants' interests therein); *In re Caribbean Petrol. Corp.*, 2013 WL 950361, at *1 (discusses prior court order allowing insurance policy buy-back free and clear of claimant's interest).

    4.    <u>Sale of the Insurance Policies Free and Clear of Interests</u>. Section 363(b) allows the trustee, "after notice and hearing, [to] use, sell, or lease, other than in the ordinary

-7-

course of business, property of the estate . . . ." 11 U.S.C. § 363(b). As noted above, Sunland's rights in the insurance policies are estate property. The trustee therefore may sell those rights to Great American pursuant to § 363.

The sale of the insurance policies free of all interests, including Sjaak's, is permitted under § 363(f)(3) (the interests are in bona fide dispute) and/or under § 365(f)(5) (creditors could be compelled to accept a money satisfaction).[6] Sjaak's claim is in bona fide dispute,[7] so § 363(f)(3) is satisfied. Further, Sjaak's describes its injury as "losses due to having manufactured product which contained peanuts from the Debtor." This injury sounds in contract or tort. To the extent its claim is valid, Sjaak's would only be entitled to money damages. Claims that can be reduced to a money judgment, as opposed to those requiring injunctive relief, fall within the language of § 363(f)(5). *See WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistance Servs. (In re WBQ P'ship)*, 189 B.R. 97, 106 (Bankr. E.D. Va. 1995) ("[I]f a holder of an interest cannot be compelled to accept a cash award in lieu of equitable relief, the sale cannot proceed under § 363(f)(5).").

     5.     <u>Adequate Protection of Sjaak's Interest</u>. At the request of a party with an interest in estate property, the court must "prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Attachment of a creditor's interest to the proceeds of the sale provides the adequate protection required under § 363(e). *See Contrarian Funds LLC v. Aretex LLC (In re Westpoint Stevens, Inc.)*, 600 F.3d

---

[6] By not objecting, all creditors with an interest in the Great American policies except Sjaak's consented to a sale free and clear of their interests. *See, e.g., Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent.").

[7] The trustee's objection to the claim includes that it was filed late and did not include any supporting documents.

231, 257 (7th Cir. 2010) ("[P]ermitting the sale of the Debtor's assets free and clear of encumbrances but attaching replacement liens on the proceeds of such sale to the same extent, validity, and priority as the original liens [is] 'squarely within the letter and purpose of [adequate protection.]'" (citations omitted)). *See also In re Johns-Manville Corp.*, 837 F.2d at 94 ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."); *Lubman v. Wells (In re Wells)*, 296 B.R. 728, 734 (Bankr. E.D. Va. 2003) (approving sale of debtor's assets by Chapter 7 trustee and requiring creditor interests to attach to proceeds); *In re DVI Inc.*, 306 B.R. 496, 504 (Bankr. D. Del. 2004) (authorizing sale of estate property free and clear of interests where interests attached to proceeds of sale); *In re Eagle Pine Prods., Inc.*, 284 B.R. 784, 787 (Bankr. E.D.N.C. 2001) (permitting Chapter 7 trustee to sell estate property free and clear of interests where interests attached to proceeds); *In re Allied Products Corp.,* 288 B.R. at 536 (legislative history indicates that having interests attach to sales proceeds constituted adequate protection). The order approving the Agreement provided that Sjaak's interest in the insurance policies attached to the sales proceeds. Sjaak's interest therefore was adequately protected.

6. <u>The Proposed "Channeling" Injunction is Consistent With § 363(f)</u>. "Courts have long recognized that inherent within the authority to sell estate property free and clear of liens is the power to enjoin creditors from pursuing the purchaser of such property." *In re Dow Corning Corp.*, 198 B.R. at 245. Notwithstanding this authority, courts have often found it necessary to provide "more explicit protection" when an "actual injunction barring creditors from suing a purchaser of estate assets is . . . necessary and appropriate to give the 'free and clear' aspect of § 363(f) meaning." *Id.* In such cases, a court may issue an injunction pursuant

to §§ 363 and 105(a). *See Id.* (enjoining tort claimants from asserting claims against debtor's insurer after approval of policy buyback agreement).

Such "channeling," "supplemental," or "clarifying" injunctions are relatively common with § 363(f) sale orders. *See In re Johns-Manville*, 837 F.2d at 93–94 (upholding the bankruptcy court's authority to restrict tort claimants' recovery to insurance proceeds); *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 56 (S.D.N.Y. 2010), *affirmed*, 430 B.R. 65 (S.D.N.Y. 2010) (upholding injunction preventing parties from asserting claims against purchaser of property of the estate and citing cases involving injunctions issued in support of § 363(f) sales); *In re Caribbean Petroleum Corp.,* 2013 WL 950361 at *3 (quoting with approval a channeling injunction previously entered in connection with an insurance buyback order); *In re Dow Corning Corp.*, 198 B.R. at 245 (approving a settlement that included a channeling injunction to carry out a § 363(f) sale of insurance policies); *In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 683 (Bankr. W.D. Tex. 2011) (discussing in some detail the court's earlier channeling injunction issued in connection with a § 363(f) sale order); *In re Peanut Corp. of America*, 2009 WL 8757732, at *3 (Bankr. W.D. Va. Oct. 2, 2009) (granting a channeling injunction under §§ 363(f) and 105(a) in an order approving settlement and buyback procedures of a Chapter 7 debtor's insurance policies); *In re WBQ P'ship,* 189 B.R. at 110 (granting debtor's request for a channeling injunction to accompany a § 363(f) sale order); *P.K.R. Convalescent Ctrs., Inc. v. Commonwealth of Va., Dep't of Med. Assistance Serv. (In re P.K.R. Convalescent Centers, Inc.)*, 189 B.R. 90, 96 (Bankr. E.D. Va. 1995) (same).

A channeling injunction is permissible because it compliments and carries out, rather than contradicts, an explicit provision of the Bankruptcy Code. *Cf. Law v. Siegel,* 134 S. Ct. 1188 (2014) (bankruptcy court may not use its § 105(a) "equitable" powers to take away rights,

-10-
Case 13-13301-t7    Doc 668    Filed 12/11/14    Entered 12/11/14 17:00:32 Page 10 of 13

such as a debtor's § 522 exemption rights, granted by specific federal law).

It makes no difference whether the channeling injunction is entered in a Chapter 11 or Chapter 7 case, so long as it furthers a § 363(f) sale. The cases cited above involved § 363(f) sales in a variety of contexts, including trustee sales in Chapter 7 and debtor in possession sales in Chapter 11 (both with and without a contemplated plan of reorganization or liquidation).

    C.    <u>Section 524(g) Does Not Apply</u>.

Sjaak's argues that because § 524(g) provides a mechanism for entry of a channeling injunction in a certain limited instance, by implication no other channeling injunction may be entered. This argument lacks merit. Section 524(g) applies only when a discharge is granted (there will be no discharge in this case), only in Chapter 11 cases (this is a Chapter 7), only when a plan of reorganization is confirmed (there will be no plan in this case), and only when the debts at issue are asbestos-related (Sunland manufactured peanut butter). The notion that Congress intended to limit channeling injunctions to § 524(g) is contradicted by § 363(f) and has been rejected by the courts that have entered channeling injunctions to carry out § 363(f) sales.

    D.    <u>Sjaak's Due Process Rights Are Not Violated</u>.

Sjaak's also argues that its due process rights are violated because it was not forewarned that its right to pursue Great American could be enjoined. Sjaak's asserts that if it had known of the injunction, it would have filed a timely proof of claim. The argument fails. Pursuant to a Notice of Possible Dividend served on November 20, 2013, a bar date was set in this case for February 18, 2014. Sjaak's received notice of the bar date but apparently elected not to file a claim. Sjaak's knew or should have known that § 363(f) sales, whether of insurance policies or other estate assets, are not unusual. Sjaak's took a calculated risk in not filing a claim, and cannot complain that the channeling injunction, which does no more than carry out a § 363(f)

sale to Great American, deprived Sjaak's of its due process rights. This is particularly true given New Mexico's clear law that Sjaak's has no direct claim against Great American.

Further, the Agreement sets aside $250,000 to pay late-filed claims such as Sjaak's. Although at this point the Court cannot tell whether Sjaak's will receive more or less than creditors with timely filed claims, the trustee estimated that Sjaak's would receive a substantial dividend on its claim if the settlement were approved. For this reason also, Sjaak's has not suffered a due process violation.

E.   <u>Best Interests of the Estate</u>.   The uncontradicted evidence, including the hard work of the trustee and his counsel and the nearly unanimous creditor support, strongly support a finding that the Agreement is fair and reasonable, and that approval of the Agreement is in the best interests of the estate.

## III.   CONCLUSION

The settlement provided a swift and sensible resolution of the dispute with Great American and enjoyed nearly unanimous creditor support. Considering the record in this case, the trustee's efforts to maximize the value of the estate, and the limited nature of the only objection, the Court found that the Agreement was fair and reasonable and in the best interests of the estate. Sale of the insurance policies pursuant to § 363(f) was appropriate, as was the requested "channeling" injunction. The Court therefore granted the motion to approve the Agreement and entered an appropriate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 11, 2014

Copies to:

Thomas D. Walker
500 Marquette Ave NW, Ste. 650
Albuquerque, NM 87102-5309

Don F. Harris
1803 Rio Grande Blvd. NW, Ste. B
Albuquerque, NM 87104

Alice Nystel Page
Office of U.S. Trustee
P.O. Box 608
Albuquerque, NM 87103-0608