UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SUNLAND, INC.,                                                                      No. 13-13301-tr7

    Debtor.

## MEMORANDUM OPINION

Before the Court is the Chapter 7 trustee's objection to four proofs of claim filed by S&S Farms and affiliates. The basis for the objection is that the claims were filed long after the bar date. Claimants admit the late filing but argue the claims should be deemed timely because they were timely mailed to the Clerk's office for filing. The Court held an evidentiary hearing on the matter and has considered the theories under which the claims could be deemed timely filed. The Court concludes that none of the theories can be applied to the facts of this case, and therefore sustains the trustee's objection.

### I.    FACTS[1]

On October 9, 2013, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code, one result of which was the appointment of Clarke Coll as the Chapter 7 trustee. Initially, creditors were mailed a "Notice of No Dividend" pursuant to Fed.R.Banks.P. 2002(e).[2]

On November 22, 2013, a Notice of Possible Dividend was mailed to the creditor matrix.

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), *aff'd*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[2] Sometimes referred to as a "Rule" or the "Rules."

Recipients of the notice included S&S Farms, Jacob Silhan, Eric Silhan, and Karla Silhan (together, the "Claimants").[3] The notice stated that to share in any payment from the Debtor's estate, non-governmental creditors had to file proofs of claim no later than 90 days after the date of service of the notice.[4]

Eric Silhan testified that in January 2014, he mailed an original proof of claim for each Claimant[5] to the Clerk's office at the following address:

> Office of Clerk
> Federal Building and United States Courthouse
> 500 Gold Ave. SW 10th Floor
> P.O. Box 546
> Albuquerque, NM 87102

Each proof of claim was signed by the Claimant and dated "1/14," which Mr. Silhan testified meant "January 2014." According to Mr. Silhan, he put the original Claims in an envelope, took the envelope to the local post office, had it weighed, affixed the proper postage for regular, first-class mail, and placed the envelope in the mail. He testified that the envelope was not returned to him by the postal service. For reasons unknown, the Claims were never filed by the Clerk's office. Other than Mr. Silhan's testimony, Claimants presented no evidence about when or how the Claims were mailed.

In March 2014, Claimants began receiving offers to purchase the Claims. The offers continued to come in throughout 2014. In December 2014, Argo Partners offered to buy the Claims for 40% of their face amount. Claimants agreed. Soon thereafter, however, Argo told Claimants it could not find the Claims in the Court's claim register. That was the first time

---

[3] The notices were mailed to 304 E. Grant Ave., Morton, Texas 79346. Eric and Karla Silhan no longer live at that address, but their son Jacob Silhan does. Claimants do not assert that they lacked prompt notice of the bar date.
[4] 90 days after the date of service is February 20, 2014.
[5] The four claims are: S&S Farms (owned by Eric and Karla Silhan), $188,490.61; Jacob Silhan, $1,647.20; Eric Silhan, $23,604.55; and Karla Silhan, $52,692. 94 (together, the "Claims").

Claimants learned their Claims had not been filed.

According to Mr. Silhan, in January 2015, he sent photocopies of the original Claims to the Court, again by first-class mail. In February 2015, Mr. Silhan called Argo and asked if the Claims were now on the claims register. Argo said they were not. According to Mr. Silhan, he mailed the Claims a third time in March 2015, this time by certified mail. The Claims were filed by the Clerk's office on March 5, 2015. By then, 378 days had passed since the bar date.

## II. DISCUSSION

A. <u>Claim Objection; Burden of Proof</u>. Allowance of a proof of claim is governed by 11 U.S.C. § 502(a) and Fed.R.Bankr.P. 3001(f). A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." *Kittel v. First Union Nat'l Bank (In re Kittel)*, 2002 WL 924619 at *6 (10th Cir. BAP 2002) (citing *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1466 (10th Cir. 1992), abrogated on other grounds, *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)). A claim is deemed allowed unless an interested party objects. 11 U.S.C. § 502(a).

"The objecting party has the burden of going forward with evidence supporting the objection." *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 260 B.R. 517, 524 (10th Cir. BAP 2001), aff'd, 281 F.3d 1173 (10th Cir. 2002). The objecting party's evidence "must be of probative force equal to that of the allegations contained in the proof of claim." *Id.* "Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim." *Id.* (citing *Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677, 680 (10th Cir. 1993)). *See also In re Picacho Hills Util. Co., Inc.*, 515 B.R. 820, 824 (Bankr. D.N.M. 2014) (citing *Allen*); *In re Wedco Mfg., Inc.*, 2014 WL 3534043, at *1 (Bankr. D. Wyo. 2014) (same).

B. <u>Claims Must be Filed Timely</u>.

The bar date to file a proof of claim in a chapter 7 case is governed by Rule 3002(c), which provides in part:

> (c) <u>Time for Filing</u>. In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:
> …
>
> (5) If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

The Rule 3002(c)(5) exception applies here. To be filed timely under the Rules, the Claims should have been filed no later than February 20, 2014.

C. <u>Effect of Filing Late</u>.

Section 726[6] governs distribution of property of a Chapter 7 estate. The section provides, in general terms, that estate funds are paid first to allowed priority claims (including allowed administrative expense claims), then to timely filed general unsecured claims, then to late-filed general unsecured claims, then to punitive damage claims, then to post-petition interest on such claims, and lastly to the debtor. § 726(a). Late-filed general unsecured claims have a lower priority than timely-filed general unsecured claims. In the typical Chapter 7 case, that means that the late-filed claims receive no payment.[7]

D. <u>Claimants' Request for § 726(a)(2)(A) Allowance Despite the Late Filing</u>.

Claimants admit their Claims were filed late, but ask that the Court treat the Claims as timely because they were mailed timely. Below, the Court discusses the possible theories under

---

[6] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.
[7] The trustee testified that there may be enough money in the Sunland estate to make a distribution of some amount to holders of late-filed claims.

-4-

which Claimants' request might be granted.

        1.    <u>Excusable Neglect</u>.  Rule 9006(b) gives bankruptcy courts, in certain circumstances, the power to allow late filings of pleadings, claims, and other court-filed documents:[8]

> (1) <u>In General</u>.  Except as provided in paragraphs (1) and (2) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
> …
>
> (3) <u>Enlargement Governed by Other Rules</u>.  The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), *3002(c)*, 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033, *only to the extent and under the conditions stated in those rules*.

(italics added).  In Chapter 11 cases, the Court may extend the deadline for filing a proof of claim under the "excusable neglect" standard.  *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993) (the "excusable neglect" standard empowers courts to accept late filings "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control").

Chapter 7 cases are different, however, because Rule 3002(c) applies in chapter 7s but not Chapter 11s.  In Chapter 7 cases, the Court may only enlarge claim filing deadlines to the extent allowed by Rule 3002(c).  *See* Rule 9006(b)(1).  Rule 3002(c) has no "excusable neglect" provision.  *Pioneer*, 507 U.S. at 389 ("The 'excusable neglect' standard of Rule 9006(b)(1)

---

[8] "The time-computation and time-extension provisions of Rule 9006, like those of Federal Rule of Civil Procedure 6, are generally applicable to any time requirement found elsewhere in the rules unless expressly excepted." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 389 n.4 (1993).

governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."); *Jones v. Arross*, 9 F.3d 79 (10th Cir. 1993) ("excusable neglect" standard for late-filed claims applies only in Chapter 11); *In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428, 1432 (9th Cir. 1990) ("Rule 3002(c) identifies six circumstances where a late filing is allowed, and excusable neglect is not among them"); *Smartt Const. Co. v. Chadderdon (In re Smartt Const. Co.)*, 138 B.R. 269, 271 (Bankr. D. Colo. 1992) ("[T]he plain language of Rule 9006 does not permit an extension of time to file a proof of claim in a Chapter 7 case for excusable neglect"). *See generally* 9 Collier on Bankruptcy, ¶ 3002.03 [2] (16th ed. 2010) ("The excusable neglect standard provided by Rule 9006(b) does not permit the court to extend the time for filing proofs of claim under Rule 3002(c)") (citations omitted). Excusable neglect cannot be used in this case to extend the bar date for filing the Claims.

      2.    <u>Section 105(a)</u>. Bankruptcy courts are granted certain equitable powers under § 105(a).[9] Theoretically, the Court could exercise its § 105(a) equitable powers to extend the bar date for Claimants. A considerable body of case law, however, make clear that it would be error to do so. In *Law v. Siegel*, the Supreme Court held that although "[s]ection 105(a) confers authority to 'carry out' the provisions of the Code," the Court may not do so "by taking action that the Code prohibits." 134 S. Ct. 1188, 1194 (2014). The same holds true for actions the Rules prohibit. *See In re Scrivner,* 535 F.3d 1258 (10th Cir. 2008) ("Section 105(a) does not empower courts to create remedies and rights in derogation of the Bankruptcy Code and Rules"); *In re Combustion Engineering, Inc.,* 391 F.3d 190, 236 (3d Cir. 2004) (equitable powers emanating from § 105(a) … are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules") (quoting *In re Barbeiri,* 199 F.3d 616, 620-21 (2d

---

[9] "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

Cir. 1999))). *See also Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir. 1987) (same); *In re Etzel,* 2004 WL 2044093 *3 (Bankr. D. Kan. 2004) ("The Court cannot use its equitable powers under § 105(a) to circumvent the plain language of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure"). The Court therefore cannot use its § 105(a) powers to extend the Claimants' filing deadline, since doing so would be contrary to Rule 3002(c). *See, e.g.*, *In re Coastal Alaska Lines, Inc.,* 920 F.2d at 1432 (court had no equitable discretion to extend the time limit established by Rule 3002(c)); *In re S.A. Morris Paving Co.*, 92 B.R. 161, 163 (Bankr. W.D. Va. 1988) (court lacks equitable power to enlarge the time for filing a proof of claim unless one of the six situations in Rule 3002(c) exists); *In re Jemal*, 496 B.R. 697, 701 (Bankr. E.D.N.Y 2013) (same); *In re Hyde*, 413 B.R. 719, 721 (Bankr. D. Idaho 2009) (court may not equitably enlarge deadline for filing a claim in a chapter 12 case; one of the Rule 3002(c) exceptions must apply).

   3. <u>The Mailbox Presumption</u>.

     a. <u>In General</u>. In the common law, "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. U.S.*, 285 U.S. 427, 430 (1932) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884)).[10]

     b. <u>Bankruptcy Notices</u>. The "mailbox presumption" is frequently relied upon by bankruptcy courts to find that notices mailed by the clerk's office were received by creditors. For example, in *In re Ricketts*, the court stated:

> Appellant denies receiving the bankruptcy court's January 13 notice, although his

---

[10] This "mailbox presumption" should not be confused with the "mailbox rule" in contract law, i.e., that once an offer is made, acceptance is effective when the offeree puts the signed contract in the mail. *See, e.g., Hinc v. Limo-O-Sol Co.,* 382 F.3d 716, 719 (7th Cir. 2004) (citing Restatement (Second) of Contracts § 63 (1979)).

> name appears on the court's mailing matrix. Where the bankruptcy court record shows a certificate of mailing and a complaining party submits an affidavit declaring notice was not received, the weight of the evidence favors the court's certificate. If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled. For this reason, an allegation that no notice was received does not, by itself, rebut the presumption of proper notice. *In re American Properties,* 30 B.R. 247, 250 (Bankr. D. Kan. 1983).

80 B.R. 495, 497 (9th Cir. BAP 1987). Similarly, in *In re Schicke*, the Bankruptcy Appellate Panel affirmed the bankruptcy court's ruling that a creditor received notice of the bar date for filing nondischargeability actions:

> Papers sent by United States mail are presumed received by the addressee, absent evidence to the contrary. *See, e.g., Rosenthal v. Walker,* 111 U.S. 185, 193, 4 S. Ct. 382, 28 L. Ed. 395 (1884); *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 735 (5th Cir. 1995); *In re Bucknum,* 951 F.2d 204, 206–07 (9th Cir. 1991); *Denmon v. Runyon,* 208 B.R. 225 (D. Kan. 1997); *In re Grand Union Co.,* 204 B.R. 864 (Bankr. D. Del. 1997). Here, it is undisputed that the bankruptcy court clerk sent the Bankruptcy Notice to [creditor] to the address listed in the debtor's Schedule F. Thus, it must be presumed that the Bankruptcy Notice was received by the addressee. This presumption was in no way rebutted by [creditor].

290 B.R. 792, 801 n.20 (10th Cir. BAP 2003). *See also Velasquez v. Delta Airlines Inc.,* 2008 WL 2225832, at *2 (D. Utah 2008) (plaintiff's denial of receipt did not rebut the presumption that the mailed notice had been received); *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 735 (5th Cir. 1995) (to the same effect); *Denmon v. Runyon,* 208 B.R. 225, 227 (D. Kan. 1997) (when notice involves a mailing from a bankruptcy court, and a certification of mailing is in the record, an allegation of denial of receipt does not, by itself, rebut the presumption of proper notice); *In re Loomas,* 2013 WL 5615943 at *4 (10th Cir. BAP 2013) ("as the bankruptcy court correctly pointed out, evidence of proper mailing [by the court] raises a rebuttable presumption of delivery . . . mere denial of receipt alone does not rebut the presumption that the mailed item was received").

c. <u>Creditors Filing Proofs of Claim by Mail</u>. Less clear is whether creditors are entitled to the mailbox presumption when mailing the proofs of claim to the Clerk's office for filing. Some courts view claim filing as different in kind from sending notices, and therefore are unwilling to apply the mailbox presumption when a creditor asserts it timely mailed a claim that was not filed. For example, in *Chrysler Motors Corp. v. Schneiderman (In re Chrysler Motors Corp.)*, the Third Circuit held:

> A mailing in itself is not a filing. If we adopted the rebuttable presumption rule we would greatly complicate bankruptcy administration, as it would be uncertain in many cases whether a scheduled creditor failed to file a proof of claim because of an oversight or because it was abandoning its claim. We also point out that a creditor can protect itself with minimal expense through the use of certified mail with a return receipt requested when filing a proof of claim or, if convenient, can provide for manual filing across the counter in the clerk's office. Furthermore, a rebuttable presumption rule would easily permit a creditor which failed to file a proof of claim to fabricate evidence, not easily disprovable, that it had been properly mailed.

940 F.2d 911, 914-15 (3d Cir. 1991). *See also In re Edwards*, 2010 WL 3807161 *5 (Bankr. M.D. Ala. 2010) (follows *Schneiderman*); *In re Maurice*, 167 B.R. 114, 133 (Bankr. N.D. Ill. 1994) (same); *In re 50-Off Stores, Inc.*, 220 B.R. 897, 905 (Bankr. W.D. Tex. 1998) (same).

Other courts have allowed creditors to use the mailbox presumption upon proof that they timely mailed a claim to the clerk's office. In *In re Nimz*, the Seventh Circuit held:

> It is true that mailing alone does not constitute filing, but that filing requires delivery and receipt by the proper party. United States v. Lombardo, 241 U.S. 73, 36 S. Ct. 508, 60 L. Ed. 897 (1916). It is also well recognized, however, that a timely and accurate mailing raises a rebuttable presumption that the mailed material was received, and thereby filed. Hagner v. United States, 285 U.S. 427, 430, 52 S. Ct. 417, 76 L. Ed. 861 (1932); Haag v. Commissioner, 59 F.2d 516, 517 (7th Cir. 1932).
> …
>
> Accordingly, here the presumption of receipt must prevail, and we conclude that it must be found that the proofs of claim were received, and therefore filed, before the six month limitation period expired.

-9-

505 F.2d 177, 179 (7th Cir. 1974). *See also Graham v. Hudson (In re Graham)*, 290 B.R. 424, 441 (Bankr. N.D. Ga. 2003) (proof of mailing the claim established rebuttable presumption of receipt); *In re Pyle*, 201 B.R. 547, 552 (Bankr. E.D. Cal. 1996) (same, at least for Chapter 13 cases); *In re Kero-Sun, Inc.*, 63 B.R. 50, 53 (Bankr. D. Conn. 1986) (quoting and following *Nimz*).

Judge Leif Clark analyzed the opposing views in *In re 50-Off Stores*, and concluded *Schneiderman* had the better analysis:

> The more straightforward application of ordinary rules of statutory construction to the plain language of the bankruptcy rules, employed by the Third Circuit in *Schneiderman,* seems far more defensible (and sensible). . . . We conclude that the "mailbox rule" does not apply to the filing of claims, and that no presumption is therefore to be indulged in favor of the movants with regard to their contention that they mailed their claims to the bankruptcy court in a timely fashion.

220 B.R. at 906. Neither the United States Supreme Court nor the Tenth Circuit has ruled on the issue.

d. <u>Proof of Mailing</u>. Before a creditor could invoke the mailbox presumption to show his claim was timely filed, he must introduce sufficient proof of mailing. In *Sorrentino v. IRS*, 383 F.3d 1187 (10th Cir. 2004), the Tenth Circuit discussed the mailbox presumption as it applied to mailing a tax refund to the Internal Revenue Service. A divided panel held it was appropriate to allow the presumption, but only if the proof of mailing included something more than the self-serving testimony of the mailer. The court reasoned:

> Allegations of mailing are easy to make and hard to disprove. *Cf. Benavidez v. City of Albuquerque,* 101 F.3d 620, 626 (10th Cir. 1996) (recognizing that proving a negative may be difficult). Because the taxpayer, not the IRS, controls the mailing of a tax return, the taxpayer, not the IRS, has access to any evidence demonstrating the return has been mailed. To establish a presumption of delivery . . . the burden in these types of cases thus rests on the taxpayer to make "a meaningful evidentiary showing" at the outset.

*Id.* at 1194. The court required some independent corroborating evidence to establish a

presumption of timely delivery, such as a verifiable proof of postmark or dated receipt. *Id.* Without a requirement of corroborating evidence, the result would be "a jury trial every time the [mailer . . .] alleges timely mailing." *Id.* Moreover, the requirement of corroborating evidence means that the trial court often will not have to make a credibility determination because the mailer's testimony alone, assuming its truth, is insufficient. *Id.* at 1195. *See also Crook v. Comm'r*, 173 Fed. Appx. 653, 657 (10th Cir. 2006) (applying *Sorrentino* in a prison-mailbox case); *Myers v. Dolgencorp, Inc.*, 2006 WL 408242, at *7 (D. Kan. 2006) (applying *Sorrentino's* requirement of independent corroborating evidence of mailing to a dispute under the Family and Medical Leave Act); *Orman v. U.S.*, 2006 WL 2457930 (D. Kan. 2006) (following *Sorrentino*).

The Court concludes that if the Tenth Circuit were to hold that the mailbox presumption applies in proof of claim filing cases like this one, it would adopt *Sorrentino's* requirement that the claimant provide corroborating evidence in support of any self-serving testimony about mailing.[11]

### E. Claimants Did Not Carry Their Burden of Proof.

As noted above, Claimants presented no corroborating evidence to support Mr. Silhan's testimony. Therefore, the mailbox presumption does not arise even if it otherwise would have.

Without the presumption, Claimants did not carry their burden of proving the Claims were timely. The fact that the Claims were not filed until March, 2015 is substantial evidence of late filing. While the Court gives Mr. Silhan's testimony weight, the Court finds that the actual filing date carries greater weight than the uncorroborated testimony.

This case is a good example of the need for corroborating evidence of mailing. Mr. Silhan was a credible witness and the Court has no reason to doubt his honesty or integrity. On

---

[11] The Court is not making a determination about what type or weight of corroborating evidence would be sufficient to raise the mailbox presumption.

the other hand, it seems very unlikely that two properly addressed, stamped envelopes, mailed almost a year apart, would both be lost by the Post Office (before delivery) or the clerk's office (after delivery). The mail was never returned. It is impossible for the Court to know what happened. Assuming the mailbox presumption would be extended to cases such as this one, corroborating evidence supporting the mailer's testimony would have been helpful.

### III. CONCLUSION

The Court reviewed the possible ways it might allow Claimants' Claims under § 726(a)(2)(A), despite the fact the Claims were filed late. No rule or theory (e.g. excusable neglect, § 105(a), or the mailbox presumption) affords Claimants relief in this matter. On the merits, the Claimants did not carry their burden of proving that their Claims were timely mailed. The Court therefore rules that the Claims are untimely and must relegated to the payment priority set forth in § 726(a)(3). A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 27, 2015.

Copies to:

Thomas D. Walker
500 Marquette Ave. NW, #650
Albuquerque, NM 87102

Eric Silhan
804 East Harding Ave.
Morton, TX 79346

Clarke C. Coll
P.O. Box 2288
Roswell, NM 88202